IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARILIN ARTEAGA,

    Plaintiff,

v.                                                                                             1:21-cv-00530-JMR

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Marilin Arteaga's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 25), which was fully briefed on June 17, 2022. *See* Docs. 30–32. The parties consented to my entering final judgment in this case. Docs. 38–41. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the ALJ erred by failing to properly assess the opinion of psychological consultative examiner Dr. Lori Martinez. I therefore GRANT Ms. Arteaga's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.   **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III. Background and Procedural History

Ms. Arteaga was born in 1959; completed a technical accounting degree in Cuba; emigrated to the United States; and worked as a food packager, a prep cook, a home healthcare provider, and a hotel housekeeper.  AR 41–42, 205, 210, 241.[4]  Ms. Arteaga filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 3, 2019[5]—alleging disability since December 12, 2018, due to major depression, severe anxiety,

---

[3] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 17-1 through 17-8 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] Ms. Arteaga's protective filing date for SSI is April 12, 2019.  AR 15.  A protective filing date is the date the Social Security Administration receives a written statement of intent to file or an

asthma, and attention deficit disorder. AR 205–15, 240. The Social Security Administration ("SSA") denied her claims initially on July 26, 2019. AR 107–14. The SSA denied her claims on reconsideration on January 22, 2020. AR 119–29. Ms. Arteaga requested a hearing before an ALJ. AR 196–204. On December 3, 2020, ALJ Michael Leppala held a hearing. AR 33–54. ALJ Leppala issued his unfavorable decision on January 8, 2021. AR 9–26.

The ALJ found that Ms. Arteaga met the insured status requirements of the Social Security Act through June 30, 2023. AR 17. At step one, the ALJ found that Ms. Arteaga had not engaged in substantial gainful activity since December 12, 2018, her alleged onset date. *Id*. At step two, the ALJ found that Ms. Arteaga had the following severe impairments: lumbar spondylosis, hypertension, asthma, anxiety, and depression. *Id.* The ALJ found that Ms. Arteaga's obesity was a nonsevere impairment. AR 18.

At step three, the ALJ found that none of Ms. Arteaga's impairments, alone or in combination, met or medically equaled a Listing. AR 18–19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Arteaga's RFC. AR 19–21. The ALJ found Ms. Arteaga had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following. The Claimant is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She is limited to frequent exposure to atmospheric conditions. The Claimant can independently perform multi-step tasks that require limited judgment, but is unable to perform tasks involving multi-layer decision making or supervisory tasks. She can respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to superficial interactions with coworkers and supervisors, but no contact with the general public.

---

oral inquiry about benefits. *See* SSA, PROGRAMS OPERATIONS MANUAL SYSTEMS ("POMS") GN 00204.010 and SI 00601.015.

AR 19.

At step four, the ALJ found that Ms. Arteaga could perform her past relevant work as a housekeeping cleaner. AR 22. The ALJ therefore found Ms. Arteaga not disabled at step four. *Id.* Ms. Arteaga requested review by the Appeals Council. AR 196–204. On April 12, 2021, the Appeals Council denied the request for review. AR 1–8. Ms. Arteaga timely filed her appeal to this Court on June 10, 2021. Doc. 1.[6]

### IV.   Ms. Arteaga's Claims

Ms. Arteaga raises seven arguments for reversing and remanding this case: (1) the ALJ failed to properly assess her asthma and allergies; (2) the ALJ failed to properly assess her spine and joint impairments; (3) the ALJ failed to properly assess the opinion of psychological consultative examiner Dr. Lori Martinez; (4) the ALJ failed to properly assess the opinion of non-examining state agency psychological consultant Dr. Stephanie Crall; (5) the ALJ failed to properly assess her subjective symptoms and limitations; (6) the ALJ failed to make findings regarding the demands of her past work as a housekeeper; and (7) the ALJ failed to resolve a conflict between the vocational expert's testimony and governmental vocational resources. *See* Doc. 25 at 10–25. The Court remands based upon Ms. Arteaga's third argument—that is, because the ALJ failed to properly assess the opinion of psychological consultative examiner Dr. Martinez. The Court does not address the other arguments, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

V.     **Analysis**

Ms. Arteaga argues that the ALJ failed to properly assess the opinion of psychological consultative examiner Dr. Lori Martinez. Doc. 25 at 13–17. She argues that the ALJ erred by finding Dr. Martinez's opinion "somewhat persuasive," yet then failing to explain what parts of the opinion he found persuasive and what parts he did not. *Id*. at 14. She also argues that the ALJ erred in finding Dr. Martinez's opinion inconsistent with other medical evidence. *Id*. at 15–16. In response, the Commissioner argues that the ALJ adequately considered the regulatory factors for analyzing the persuasiveness of Dr. Martinez's opinion, and that "the ALJ's findings were well articulated and supported by the record." Doc. 30 at 11. For the reasons explained below, the Court agrees with Ms. Arteaga.

Dr. Martinez provided a consultative psychological examination of Ms. Arteaga on December 3, 2019, at the request of Disability Determination Services. AR 563–66. As part of the consultation, Dr. Martinez conducted a mental status exam[7] and found that Ms. Arteaga had "low self confidence and a high level of dissatisfaction with her overall life circumstances," and presented with "flat affect with prominent signs of agitation and sadness." AR 565. She noted that Ms. Arteaga described her mood as depressed, "appeared overwhelmed with emotion[,] and was quite tearful intermittently throughout the interview." *Id*. She further noted that Ms. Arteaga "appeared highly insecure, confused and helpless." *Id*. Finally, Dr. Martinez noted that Ms. Arteaga had "limited motivation and energy and no longer [was] motivated or [had] a desire

---

[7] A mental status examination is "a structured assessment of the patient's behavioral and cognitive functioning" that "includes descriptions of the patient's appearance and general behavior, level of consciousness and attentiveness, motor and speech activity, mood and affect, thought and perception, attitude and insight, the reaction evoked in the examiner, and, finally, higher cognitive abilities." DAVID C. MARTIN, CLINICAL METHODS: THE HISTORY, PHYSICAL, AND LABORATORY, ch. 207 (Walker, HK, et al. eds., 3d ed. 1990), (available at https://www.ncbi.nlm.nih.gov/books/NBK320/ (last visited May 24, 2023)).

to interact with others socially or participate in any recreation or social activities that she previously enjoyed." *Id*.[8] Dr. Martinez diagnosed Ms. Arteaga with major depressive disorder and generalized anxiety disorder and stated that her prognosis was "quite poor." AR 566. Dr. Martinez opined that Ms. Arteaga's "social and occupational functioning are compromised greatly," that she "struggle[d] with resentment and limited frustration tolerance," that she had "covert anger and impaired coping that has led to a severe depression," and that she was "tired and unmotivated and does not seem capable of handling even the basic stressor[s] of life." AR 565–66.

In reviewing Dr. Martinez's opinion, the ALJ's analysis consists of two sentences: "The opinion of the consultative evaluating psychologist, Lori Martinez, PsyD, is somewhat persuasive. Ex. 3F. Her opinion is supported by her own one-time mental status examination but is not entirely consistent with the medical evidence from Claimant's treatment notes." AR 21.

Ms. Arteaga filed her applications for DIB and SSI in 2019, thus the substantially revised regulations adopted March 27, 2017, apply to her claims. The revised regulations define five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a), 416.913(a) (both effective March 27, 2017). The SSA evaluates evidence it receives "according to the rules pertaining to the relevant category of evidence." *Id*.

---

[8] Dr. Martinez noted normal findings in other parts of Ms. Arteaga's mental status exam: eye contact was adequate; she was cooperative and candid; she was "generally oriented to person, place and time"; she did not exhibit "any bizarre or unusual behaviors, mannerisms, and/or verbalizations"; there was no evidence of delusions, hallucinations or a thought disorder; her communication skills, short and long-term memory skills, and attention and concentration skills were within normal limits; and she denied past or current suicidal or homicidal ideation. AR 565.

7

The rules pertaining to medical opinions require the SSA to evaluate and articulate the persuasiveness of the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

In evaluating the persuasiveness of medical opinions, the SSA considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a medical opinion or finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An ALJ is always required to explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions are equally well-supported and consistent with the record. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

As the Tenth Circuit recently explained,

> "[s]upportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (brackets and ellipses omitted).

While the revised regulations allow the ALJ some discretion in *how* he articulates his findings on the persuasive value of medical opinion evidence, it provides no leeway as to *whether* he articulates such findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (providing that the ALJ "will articulate" how persuasive he . . . finds "all of the medical opinions" in the

8

case record). In addition, "all [of] the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted). An ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted).

Judges in this district have found bare conclusions regarding the persuasiveness of a medical opinion insufficient.

> [A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c. An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. *See id.* § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the explanation must at least eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ."

*Zambrano v. Kijakazi*, No. 20cv1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (quotation, alterations, and citation omitted); *see also Frazer v. Kijakazi*, No. 20cv1147 GBW, 2022 WL 682661, at *6 (D.N.M. Mar. 8, 2022) ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."); and *Klein v. Kijakazi*, No. 20cv1199 LF, 2022 WL 2827582, at *7 (D.N.M. Jul. 20, 2022) (ALJ finding an opinion "somewhat persuasive" without any explanation is not legally sufficient).

Ms. Arteaga argues that the ALJ's cursory treatment of Dr. Martinez's opinion is legally insufficient. Doc. 25 at 14. She argues that the ALJ failed to explain what parts of Dr. Martinez's opinion he found persuasive and which parts he rejected. *Id*. She further argues that the ALJ offered no support for his "bald statement" that Dr. Martinez's opinion is "not entirely consistent with the medical evidence." *Id*. Ms. Arteaga argues that these errors are harmful because the ALJ failed to account for the limitation Dr. Martinez assessed in Ms. Arteaga's ability to deal with stress. *Id*. at 16.

The Commissioner attempts to argue that the ALJ's bare conclusion about inconsistency was supported by other parts of the ALJ's decision. Doc. 30 at 10. This argument is strained. Indeed, the Commissioner admits, because she must, that "the ALJ acknowledged that Dr. Martinez's conclusions appeared to be supported by her one-time mental status examination findings indicating a flat affect, agitation, sadness, depression, and limited motivation." *Id.* (citing AR 21, AR 565).

The Court agrees with Ms. Arteaga that the ALJ's assertion that Dr. Martinez's opinion is "not entirely consistent with the medical evidence from Claimant's treatment notes" is a "bald statement" that is both legally insufficient and unsupported by substantial evidence. *See Zambrano,* No. 20cv1356 KRS, 2022 WL 1746765, at *5 ("[A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c."); *Frazer*, No. 20cv1147 GBW, 2022 WL 682661, at *6 ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand.").

The ALJ's decision offers no support for the assertion that Dr. Martinez's opinion is inconsistent with Ms. Arteaga's treatment notes. The Commissioner claims that the ALJ "found

10

that Dr. Martinez's conclusions were inconsistent with the treatment notes of record, which showed . . . largely normal mental status exams." Doc. 30 at 10. The passage the Commissioner quotes in support of this assertion is from the paragraph preceding the ALJ's analysis of Dr. Martinez's opinion, which states in full:

> She also has anxiety and depression. On mental status examination, her mood has been anxious, sad, and depressed. Ex. 1F/22, 29; 2F/10; 3F/3; 4F/8, 35. It has also been frequently normal. *See, e.g.*, Exs. 1F/20, 25, 32; 2F/7, 14; 4F/3. Speech, behavior, communication skills, judgment, thought content, cognition, attention, concentration, and memory are invariably normal. Exs. 3F/3; 4F/35. In other words, apart from her mood, mental status examinations are generally normal.

AR 21. Contrary to the Commissioner's assertion, this paragraph offers no explanation as to how Dr. Martinez's opinion is inconsistent with evidence from Ms. Arteaga's "treatment notes." Instead, this paragraph of the ALJ's decision cites Dr. Martinez's opinion (3F/3, or AR 565) both for the proposition that mental status examinations have shown that "her mood has been anxious, sad, and depressed" and for the proposition that "[s]peech, behavior, communication skills, judgment, thought content, cognition, attention, concentration, and memory are invariably normal." AR 21. If anything, this paragraph shows that Dr. Martinez's exam findings were consistent with Ms. Arteaga's other treatment notes.

Dr. Martinez's opinion was consistent with the medical evidence that the ALJ cited. And the ALJ found Dr. Martinez's opinion was supported by her mental status exam. *See* AR 21. Further, the ALJ pointed to nothing in Dr. Martinez's mental status exam to show that her opinion was somehow not supported. *See id.* But the Commissioner now appears to claim that the ALJ's reference to portions of Dr. Martinez's mental status exam that were normal demonstrates how Dr. Martinez's opinion is inconsistent with Ms. Arteaga's "treatment notes." Doc. 30 at 10. This argument is a stretch. The ALJ's finding that "apart from her mood" Ms.

Arteaga's mental status examinations were "generally normal" is actually consistent with Dr. Martinez's mental status examination findings.  Dr. Martinez noted that Ms. Arteaga's eye contact was adequate; she was cooperative and candid; she was "generally oriented to person, place and time"; she did not exhibit "any bizarre or unusual behaviors, mannerisms, and/or verbalizations"; there was no evidence of delusions, hallucinations or a thought disorder; her communication skills, short and long-term memory skills, and attention and concentration skills were within normal limits; and she denied past or current suicidal or homicidal ideation.  AR 565.  Although there were certainly normal portions of the mental status examination, Dr. Martinez also found abnormal findings in the mental status examination pertaining to Ms. Arteaga's mood that supported her opinion that Ms. Arteaga's occupational function was "greatly compromised" and that she was not "capable of handling even the basic stressor[s] of life."  AR 565–66.  The ALJ offers no explanation of why he discounted this part of Dr. Martinez's opinion.

The ALJ's finding regarding Dr. Martinez's opinion is not legally sufficient.  The consistency factor calls for a comparison between the subject medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.*; *see also Zhu*, 2021 WL 2794533, at *6 (to analyze consistency, an ALJ must "compare[] a medical opinion to the evidence.")  As Ms. Arteaga asserts, the ALJ did not "describe any medical evidence with specificity to support his determination." Doc. 25 at 14,  In fact, the ALJ failed to compare Dr. Martinez's opinion to any evidence.  Instead, the ALJ merely states, with no explanation or citation to the record, that Dr.

Martinez's opinion "is not entirely consistent with the medical evidence from Claimant's treatment notes." AR 21. The Court is left to guess at what medical evidence might support the ALJ's analysis. The ALJ's "rote analysis and conclusory explanation" does not suffice under 20 C.F.R. §§ 404.1520, 416.920c. *Zambrano*, 2022 WL 1746765, at *5. With no citations to evidence, the ALJ does little more than state that Dr. Martinez's opinion is inconsistent. Such an assertion is not sufficient. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that if the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct); *Jensen*, 436 F.3d at 1165 ("The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."); *Frazer*, No. 20cv1147 GBW, 2022 WL 682661, at *6 ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."). Therefore, remand is required

Finally, the Court addresses whether the ALJ's error is harmless. The failure to adequately articulate the consistency and supportability factors only constitutes "harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (citation omitted). In such a case, the claimant is not prejudiced because the outcome would have remained the same even if the medical opinion was determined to be persuasive. *See id*. at 579.

Here, the ALJ's error was not harmless. An ALJ must conduct a thorough, individualized evaluation of the claimant's ability to handle stress. SSR 85-15, 1985 WL 56857, at *5 (Jan. 1, 1985). Such an inquiry is required because a claimant's limited ability to handle stress often creates "difficulty accommodating to the demands of work and work-like settings."

*Id*.  Dr. Martinez's opinion calls into question whether Ms. Arteaga is capable of handling the "basic stressor[s]" of employment.  The Commissioner asserts that the ALJ's finding that Ms. Arteaga was capable of only unskilled work adequately addressed Ms. Arteaga's limitation in ability to handle stress.  *See* Doc. 30 at 11.  This argument is without merit.  "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."  SSR 85-15, 1985 WL 56857, at *6.  The finding that Ms. Arteaga was capable of unskilled work, in and of itself, is not a thorough, individualized evaluation of Ms. Arteaga's ability to handle stress.  Had the ALJ credited the limitations in Dr. Martinez's opinion, he would have assigned Ms. Arteaga a more restrictive RFC.  In turn, this would have resulted in different findings at steps four and five.  Therefore, the ALJ's failure to adequately explain his rejection of Dr. Martinez's opinions was not harmless.  Remand is required for proper consideration of Dr. Martinez's opinions pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.

## VI.   Conclusion

The ALJ erred by failing to properly assess the opinion of psychological consultative examiner Dr. Martinez.  The Court remands so that the ALJ can remedy this error.  The Court does not address Ms. Arteaga's other claims of error as they "may be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d at 1299.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 25), is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Jennifer M. Rozzoni
United States Magistrate Judge
Presiding by Consent